MOORE, J.
[, The defendant, Jeffery Broussard, Jr., was accused of committing the armed robberies of two retail stores in Bastrop in which two victims were present at each store. Following a jury trial, the defendant was found guilty as charged of four counts of armed robbery and four counts of conspiracy to commit armed robbery. He was sentenced to 40 years at hard labor for each armed robbery conviction and 20 years at hard labor for each conspiracy conviction. The court ordered concurrent sentences for the four criminal offenses (two armed robbery and two conspiracy convictions) involving the first store and concurrent sentences for the four offenses involving the second establishment, but requiring that the second set of sentences will be served consecutively to the first set. From these convictions and sentences, the defendant now appeals.
For the following reasons, we vacate and set aside two of the conspiracy convictions and sentences; we affirm the remaining two conspiracy convictions and sentences, and we affirm the four armed robbery convictions and sentences.
Facts
On May 3, 2011, the defendant, Jeffery Broussard, Jr., while armed with a .32 caliber pistol, robbed the AT & T store in Bastrop, Louisiana. Three days later, on May 6, 2011, he committed an armed robbery at Advance America, a payday loan business in Bastrop, using the same pistol. Two employees, David Hakim and Dana Meeks, were present at the AT & T store robbery, and two employees, Kelly Ed-monds and Rebecca McLeod, were present at the Advance America robbery. Except for Meeks, all these | ¡¡victims testified at Broussard’s trial. Their trial testimony and Broussard’s testimony form the basis of the following factual summary:
David Hakim was sitting at his computer desk at the AT & T store in Bastrop, Louisiana, on May 3, 2011, when he heard someone speaking loudly near the front of the store where his co-worker, Dana Meeks, was located. He got up to assist Meeks. He heard a man whom he identified as the defendant, shout, “Give me all the money,” and tossed a bag to Meeks. Meeks then threw the bag to Hakim. The defendant stuck a gun to Hakim’s chest and ordered him to “[f]ill the bag.” After Hakim filled the bag with money, the defendant ordered both Hakim and Meeks to lie down on the floor. He told them he would shoot them if they followed him, and he left the store.
Three days later, on May 6, 2011, Kelly Edmonds was working in Bastrop at Advance America. She had just returned from lunch when a man, whom she identified as the defendant, came into the store. Edmonds was seated at her desk at the front of the store while McLeod, a coworker, was at her desk in the back of the store. Edmonds greeted the man and asked if she could help him. The defendant raised his shirt and showed Edmonds a “small shiny” gun tucked into his pants. Edmonds backed away from her desk and stood near the wall. The defendant warned, “You better not push that panic button.” He then climbed over the divider separating him from Edmonds and pointed the gun at her. He handed her a bag and told her he wanted “all the money in the building.”
|sAt that point, Edmonds testified, McLeod came around the corner from the back of the store. The armed man saw her and repeated to her that he wanted “all the money in the building.” McLeod told him that the money was kept in the back of the store. He forced both women to the back of the store, keeping his gun aimed at Edmonds’ back. Edmonds testi *451 fied that McLeod “opened the safe and gave him the money out of the safe.” The man then forced the women back to the front of the store where he “got the money out of the cash drawers, and made us lay down on the floor.” He told the women not to move for ten minutes or he would return to kill them. Shortly thereafter, he put a gun to McLeod’s head and forcibly took her rings from her fingers. Then he quickly left the premises. Moments later, McLeod’s sister-in-law walked into the store. After she was told of the robberies, she locked the front door and called police. Edmonds identified Broussard as the robber during a photographic lineup conducted after the robbery.
Rebecca McLeod testified that on May 6, 2011, she and Edmonds had just returned from lunch and she was completing paperwork in the back of the store. Ed-monds was taking a test on her computer in the front of the store. As she rounded the corner, McLeod saw a man pointing a gun at her. He told her he wanted “all the money in the store” and warned her not to run or make any noise. McLeod described the gun used by the robber as “a little silver shiny gun.” McLeod testified that she “went to the back and got the cash.” The man then “demanded all the money out of the front, so we had to go to the front with the gentleman, [and] get the money out of the front ... ” |4The robber then left the store, but returned, pointed a gun at McLeod’[s] temple, and took the rings off of her fingers. He quickly fled from the building.
Detective Richard Pace of the Bastrop Police Department investigated the AT & T and Advance America store robberies. He stated at trial that Broussard was developed as a suspect after police received a Crimestoppers tip. Detective Pace described and authenticated several video recordings which captured images from the robberies.
Detective Eric Newnum testified that on May 10, 2011, Broussard was taken into custody after attempting to flee from officers sent to question him. After being advised of his right to remain silent, Broussard stated that he knew nothing about the robberies. However, on May 13, 2011, Det. Newnum received information that Broussard wanted to discuss the ease. After waiving his Miranda rights a second time, Broussard gave another statement to Det. Newnum.
In the statement, which Det. Newnum read in open court, Broussard explained that he owed Henry Bates (aka “Mac”) money from drug purchases Broussard made from Bates on credit. Bates told him he could repay his debt by committing robberies. Bates picked Broussard up at his home prior to the AT & T robbery on May 3, 2011 and drove to the AT & T store. Broussard stated that he “got out and went and done the job, jumped back in the car, threw the money up front, and laid down in the back seat.” Bates gave Broussard some of the money and kept $100, the amount Broussard said he owed Bates. However, when he was asked a second time |show much he kept, Brous-sard said that he could not recall, but said that he was “deep, deep in debt” to Bates. Broussard stated that the nickel-plated .32 that he used to rob the stores belonged to Bates.
Broussard also admitted to the robbery at the Advance America store. He said Bates “had told me about that and he was supposed to pick me up that morning about nine o’clock, which he didn’t ... he had to take his kids to school ... so he picked me up ... about three o’clock or something like that, early.” They drove to the Advance America store and parked. Broussard said, “I got out and went and *452 done the job and got back in the car, laid down in the back seat.” Afterwards, Bates drove them back to his house, count-' ed the money, gave Broussard approximately $50 of the $150 in proceeds, and drove him home.
Detective Newnum testified that Brous-sard said that he was perpetually indebted to Bates from the drug purchases on credit. Broussard said that Bates and his supplier, “Nook,” threatened him regarding repayment, and warned him, “nigger you better get my money,” and “I don’t care how you get my money, I’m going to do this and I’m going to do that.”
Detective Newnum confirmed that Ed-monds, Hakim and Meeks all separately identified Broussard in a photographic lineup as the person who robbed them.
At trial, Broussard admitted that the statement he gave Detective Newnum was truthful and accurate. He testified that he suffered from hallucinations, seeing the devil at times, and had a history of consuming cocaine, hydrocodone, ecstasy, marijuana and alcohol. Broussard said that |fihis drug addiction started when he was 15 years old after being abused by his stepfather. He also stated that he suffered from paranoia and was afraid of Bates. Broussard alleged that Bates “put a pistol to my head and told me that he was going to kill me if I didn’t get his motherfuckin’ money,” and that Bates was a “gangster,” and that he “runs with gangsters.” Specifically, Broussard explained that Bates buys and sells drugs, and would “beat up” anyone who failed to repay him.
Broussard testified that a week prior to the first robbery, he purchased cocaine from Bates on credit. When Bates telephoned him asking for his money, Brous-sard told him he did not have it. Bates became upset and drove to Broussard’s home. Bates called Broussard outside, pointed a gun at his head, and told Brous-sard that he would repay Bates. If he failed, Bates threatened, he was going to kill him and burn down his house. Brous-sard stated that his fianceé, Belinda Moore, was in his house at the time.
Broussard admitted to committing the robberies, but said he “felt like if I hadn’t, Henry Bates was gonna kill me.” Brous-sard explained that Bates gave him cocaine prior to the robberies and that he was “high as a kite” before committing the crimes. Broussard insisted that when he was committing the robberies, “It wasn’t like I was out robbin’ people. I was gettiri some dope. If I did this, I’m gonna get some dope and get him off of me.” Brous-sard testified that the gun he used in the robberies was not loaded.
¡ ./Following his trial, the jury found Broussard guilty as charged of all eight counts; four counts of armed robbery and four counts of conspiracy to commit armed robbery. The jury declined to find Brous-sard not guilty by reason of insanity.
At a sentencing hearing held on September 5, 2013, the court reviewed the presen-tence investigation report (PSI), the submissions filed on behalf of Broussard and his victims, and the sentencing guidelines contained in La. C. Cr. P. art. 894.1. It specifically found that the armed robberies at the AT & T store and the Advance America store were separate incidents.
Broussard’s criminal history included a 1987 conviction in Texas for aggravated assault with a deadly weapon. Broussard was also arrested on September 6, 2006, in Houston, Texas, on a charge of possession of a controlled dangerous substance; however, the trial court determined that the arrest likely resulted in a conviction for a misdemeanor offense. The trial court also discussed Broussard’s social, educational and employment history, noting that Broussard stated he was both physically *453 and emotionally abused by his father. Broussard has three children, one being a minor child, but has never paid child support.
Broussard’s trial counsel then moved for judgment notwithstanding the verdict and a new trial, alleging insufficient evidence. Both motions were denied.
Before imposing sentence, the trial court noted the following aggravating factors: (1) Broussard knowingly created a risk of death or great |sbodily harm to more than one person; (2) Broussard used threats of or actual violence during commission of the offenses; and (3) the crimes were crimes of violence. The trial court also stated its consideration of Broussard’s drug addiction, but determined that there was an undue risk that Broussard would commit another crime if not incarcerated. Additionally, the trial court found that Brous-sard was in need of correctional treatment and that a lesser sentence would deprecate the seriousness of his actions. As such, the trial court sentenced Broussard to serve 40 years at hard labor without the benefit of parole, probation or suspension of sentence for Counts One, Two, Three, and Four (the armed robbery convictions) and 20 years at hard labor without the benefit of parole, probation or suspension of sentence for Counts Five, Six, Seven, and Eight (the conspiracy convictions). The trial court ordered the sentences for Counts One, Two, Five, and Six (the May 3, 2011 offenses) to run concurrently with each other, but consecutively to Counts Three, Four, Seven, and Eight (the May 6, 2011 offenses).
On October 14, 2013, Broussard filed a motion to reconsider his sentence, which was denied by the trial court. Broussard filed this appeal raising four assignments of error.
Discussion
In his first assignment of error, Brous-sard alleges that the evidence was insufficient to convict him of the armed robberies, particularly with respect to the charges of the armed robbery of Dana Meeks and Kelly Edmonds, since he did not take anything of value from either of the two women. During the robbery of the AT & T store, only David Hakim handed | ^Broussard cash or something of value.
Similarly, Broussard argues, he never took anything of value in Kelly Edmonds’ possession during the Advance America robbery. Edmonds, he argues, was a new employee and a convicted felon; therefore, she was likely not entrusted with any money as part of her employment at the time of the robbery.
Broussard also contends that the evidence was insufficient to convict him of conspiracy to commit armed robbery. The bill of information charged him with four counts of conspiracy to commit armed robbery of each -of the employees, Hakim, Meeks, Edmonds and McLeod. Broussard contends, however, that he did not have prior knowledge of the victims’ identities, and there was only a general plan to commit robberies. Therefore, he argues, he lacked the requisite specific intent to conspire to rob the named individuals in the bill of information.
The state argues that Broussard confessed to the crimes and admitted at trial that he robbed the victims. Although Broussard did not take any property directly from Dana Meeks or Kelly Ed-monds, it is sufficient that the property that was taken was in their presence or control. State v. Long, 36,167 (La.App. 2 Cir. 10/30/02), 830 So.2d 552 (Elements of armed robbery were proven where the defendant took property from a store while the employee was hiding in the restroom during the robbery.)
*454 Regarding the conspiracy convictions, the state maintains that the evidence clearly showed that Broussard had the specific intent to commit the armed robberies in order to fund his drug addiction. Brous-sard’s |10statement to Det. Newnum mentioned that Bates and Broussard had planned in advance to commit each robbery so that Broussard could repay his debt. Bates then picked up Broussard, “drove him to the back of the AT & T store and told him to get out.” Broussard stated that “I got out and went and done the job, jumped back in the car, threw the money up front, and I laid down in the back seat.” These facts, the state argues, demonstrate Broussard and Bates formed an agreement to commit the armed robbery prior to execution of the AT & T store robbery.
Prior to robbing the Advance America store, Broussard stated that, “he [Bates] told me to get out and I got out and went and done the job and got back in the car, laid down in the back seat.” The men then counted the money and divided the proceeds. The state argues that our law does not require that a defendant know his specific victims in order to be convicted of conspiracy to commit armed robbery.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Crossley, 48,-149 (La.App. 2 Cir. 6/26/13), 117 So.3d 585, writ denied, 2013-1798 (La.2/14/14), 132 So.3d 410. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to | n substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Crossley, supra; State v. Dotie, 43,819 (La.App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App. 2 Cir. 5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
Armed robbery is defined by La. R.S. 14:64(A) as “the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force ór intimidation, while armed with a dangerous weapon.”
If property is taken from the victim’s presence by intimidation with a weapon, it is sufficient to sustain a conviction for armed robbery. State v. Long, 36,167 (La.App. 2 Cir. 10/30/02), 830 So.2d 552; State v. Refuge, 300 So.2d 489 (La.1974); State v. Toney, 26,711 (La.App. 2 Cir. 3/1/95), 651 So.2d 387. To establish robbery, the property must be sufficiently under the victim’s control that, absent violence or intimidation, the victim could have prevented the taking. State v. Thomas, 447 So.2d 1053 (La.1984); State v. Long, supra; State v. Toney, supra.
| i2Broussard contends that evidence to support the convictions of armed robbery of Dana Meeks is insufficient because *455 Meeks did not testify at trial, and the only evidence at trial was David Hakim’s testimony that Broussard screamed “give me all the money,” and threw the bag at Meeks, who then tossed it to Hakim. He held a gun on Hakim as he filled the bag, then ordered Hakim and Meeks to get on the floor. He did not take anything from Meeks’ person.
Similarly, Broussard argues that because he did not take anything from Kelly Edmonds, and she likely did not have access to the store’s money due to a prior felony conviction, the evidence is insufficient to sustain his conviction of armed robbery.
These arguments are without merit. The state presented direct evidence at trial showing that the defendant took money belonging to the AT & T store and Advance America that was in the immediate control of all four employees of the two stores, including Meeks and Edmonds, as well as Hakim and McLeod, by the use of force or intimidation while armed with a dangerous weapon. State v. Long, supra.
The fact that Broussard did not take anything directly from Meeks’ or Ed-monds’ person, or that neither of these women actually filled the bag with the money, nor did he point a gun directly on Meeks, is not determinative. Hakim’s testimony proved that Meeks was an employee of the store. Hakim heard and witnessed Broussard shouting at Meeks at the front of the store at the time of the robbery demanding all the money in the store. Meeks was clearly intimidated by these acts. As an employee of the store, Meeks was Irresponsible for the money that Broussard stole in her presence by threats and intimidation. Based on the evidence presented, any rational trier of fact could have concluded that the defendant was guilty of armed robbery of Dana Meeks beyond a reasonable doubt.
We reach the same conclusion with respect to the armed robbery of Kelly Ed-monds. The defendant intimidated and threatened Edmonds when he showed her the pistol and demanded all the money in the store. The money was taken in her presence under threat of being shot.
We conclude that, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of armed robbery proven beyond a reasonable doubt of both employees at both stores.
Regarding the defendant’s conspiracy convictions, criminal conspiracy is defined in La. R.S. 14:26(A) as “the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.”
 For purposes of the crime of conspiracy, specific intent may be inferred from the circumstances of the transaction and actions of the defendant. State v. Johnson, 01-1084 (La.App. 3 Cir. 2/06/02), 817 So.2d 120; State v. Taylor, 96-1043 (La.App. 3 Cir. 2/05/97), 688 So.2d 1262, 1268. The overt act need not be unlawful; it may be any act, innocent or |14illegal, accompanying or following the agreement, which is done in furtherance of the object of the agreement. State v. Taylor, supra.
The existence of single or multiple conspiracies is a question of fact to be decided by the jury which must be upheld if the facts adequately sustain the conclusion. State v. Matthews, 26,550 (La.App. 2 Cir. 12/21/94), 649 So.2d 1022, 1027. In determining whether there exists single or multiple conspiracies, the court considered *456 the following five factors from U.S. v. Ellender, 947 F.2d 748, 759 (5th Cir.1991): (1) the time frame; (2) the locations of the events charged as part of the conspiracy; (3) the parties involved in the conspiracy; (4) the extent to which the overt acts of the parties indicates whether the conspiracies have a common goal; and (5) the statutory offenses charged in the indictment. Id. The court observed that each cocaine sale was distinct in time. Each was a separate transaction. The transactions did not have a common location. Nor was there any evidence of a continuing conspiracy. The court concluded that the state presented evidence sufficient for the jury to determine that there was a separate conspiracy for each transaction.
Applying the Ellender factors in this case, we conclude that the evidence presented by the state at trial showed only two conspiracies. Broussard and Bates agreed in two separate occasions to commit two robberies, one on May 3, 2011, and a second on May 6, 2011. Specifically, Broussard stated that he owed Bates money for cocaine and that Bates told Brous-sard he could pay off his debt by committing robberies. The men agreed to meet on May 3, 2011, in order to commit the robbery. l^Bates drove Broussard to a location near the AT & T store, and Brous-sard went inside and robbed both Meeks and Hakim. Then, on May 6, 2011, the two men planned to meet to commit another robbery. As previously agreed, Bates picked up Broussard and Broussard went inside the Advance America store to carry out the robbery. Once in the store, Brous-sard robbed Edmonds and McLeod.
The common goal of the conspirators in the first robbery was to obtain AT & T’s property. The charge of two counts of armed robbery arose from the taking of AT & T’s property with two victims present. The offenses occurred at one time and one place, and was committed by the same co-conspirators. These factors indicate a single conspiracy to rob the AT & T store. Similarly, the common goal of the conspirators in charges involving Edmonds and McLeod was to obtain money from the Advance America store. The robbery occurred at the same time and place. Also, Broussard was charged in the same bill of information for all of the conspiracy to commit armed robbery charges, although Hakim and Meeks, and Edmonds and McLeod, were all identified by name.
We therefore conclude that the evidence was sufficient to sustain convictions for one conspiracy to commit armed robbery of AT & T and one conspiracy to commit armed robbery of Advance America. For these reasons, two of Broussard’s four convictions for conspiracy to commit armed robbery shall be vacated.
Regarding the specific intent requirement in determining the sufficiency of evidence to sustain the remaining conspiracy convictions, the | ^evidence clearly showed that Broussard had the specific intent to commit the armed robberies in order to fund his drug addiction. Brous-sard’s statement to Det. Newnum mentioned that Bates and Broussard had planned in advance to commit each robbery so that Broussard could repay his debt. Bates then picked up Broussard, “drove him to the back of the AT & T store and told him to get out.” Broussard stated that “I got out and went and done the job, jumped back in the car, threw the money up front, and I laid down in the back seat.” These facts demonstrate an agreement to commit the armed robbery prior to execution of the AT & T store robbery.
Similarly, Broussard’s testimony indicated that he and Bates agreed to commit another robbery, which would be carried out when Bates picked Broussard up.
*457 Bates picked up Broussard and drove him to the Advance America store. Prior to robbing the Advance America store, Broussard stated that, “he [Bates] told me to get out and I got out and went and done the job and got back in the car, laid down in the back seat.” The men then counted the money and divided the proceeds.
We know of no provision in the law that requires that a defendant know whom the identity of his victims will be in an armed robbery of an establishment in order to prove a conspiracy. Viewing the evidence favorable to the prosecution, we conclude that any rational trier of fact could have concluded that the defendant was guilty beyond a reasonable doubt of two conspiracies to commit armed robbery charges. The fact that there were two employees present at each store when the each single conspiracy was carried out does not turn two conspiracies into four | ^conspiracies.
By his second assignment of error, Broussard contends that the district court and jury erred, as a matter of law, in failing to find that the defendant proved a compulsion defense in accordance with La. R.S. 14:18(6). Broussard claims that he was forced to commit the offenses under the threat of death or great bodily harm. To support this claim, he refers to his statement to Det. Newnum wherein he stated that Bates had allowed him to purchase drugs on credit and that he was “deep, deep in debt” to Bates. He also contends that he was afraid of Bates’ supplier, “Nook.” During his trial testimony, Broussard stated that Bates is a gangster and that he specifically threatened that if Broussard did not pay him that he would kill him and burn his house down. He also stated during his trial testimony that he felt that if he did not commit the robberies, Bates would kill him.
The state argues that Broussard failed to prove, by a preponderance of evidence, that he was justified in committing the armed robberies because his defense is based solely on his self-serving testimony that he was forced to commit the robberies. To the contrary, the evidence adduced at trial failed to show that Broussard was acting under present or immediate threats. According to Broussard’s trial testimony, the first alleged threat came a week prior to the first robbery. If Broussard was actually afraid for his life, the state argues, he would have sought help prior to the first robbery. Bates allowed him to keep some of the proceeds from the robberies. If Bates was truly a creditor who threatened Broussard’s life, then it is improbable that Bates would have allowed him to keep some of the stolen cash. The state l18also argues that threats by “Nook” were never present or immediate because he was never with Bates or Broussard during the robberies. The state also points out that Broussard failed to request a jury instruction in regard to the alleged justification.
The defense of justification is an affirmative defense that must be proven by a preponderance of the evidence. State v. Morrison, 45,620 (La.App. 2 Cir. 11/24/10), 55 So.3d 856, 864 (citing State v. Cheatwood, 458 So.2d 907 (La.1984)). The defense of justification can be claimed when any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm, and the offender reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed. Id.; La. R.S. 14:18(6). In reviewing a conviction in which the defendant offered testimony that his criminal actions were justified, a reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. Id.
*458 We conclude on review that the jury reasonably rejected Broussard’s claim that he was justified in committing the armed robberies. Broussard told police that he was persistently indebted to Bates because he bought cocaine from him on credit. Broussard stated that a week before the robbery at the AT & T store, Bates told him that he could repay his debt by committing robberies. Despite receiving a warning a week in advance of Bates’ intentions, Broussard did not attempt to repay Bates, or seek assistance from police or shelter elsewhere. Instead, he waited for Bates to|13pick him up, give him a gun and drive him to the AT & T store to commit the robbery. In fact, Broussard agreed to commit another robbery three days later. Again, he sought no assistance in the interim. Further, although Broussard told Det. Newnum that he was “deep, deep in debt” to Bates, Bates allowed him to keep a portion of the proceeds of the robberies — a fact that flies in the face of Brous-sard’s allegation that Bates was unrelenting in his pursuit to be repaid. While Broussard contends that he was afraid Bates would kill him if he failed to pay him back, he kept purchasing cocaine from him and testified during his trial that when he was committing the robberies, “It wasn’t like I was out robbin’ people. I was gettin’ some dope.” While Broussard’s statements to police undoubtedly prove that he is addicted to drugs, it does not demonstrate that he was under present and immediate threats of great bodily harm or death. Accordingly, this assignment is without merit.
By his third assignment of error, the defendant argues that the convictions for both armed robbery and conspiracy to commit armed robbery involving the same offenses violate double jeopardy. Brous-sard contends that the evidence used to convict him of the four armed robbery charges is the same evidence used to convict him of the four conspiracy to commit armed robbery charges.
The state argues that Broussard’s convictions for armed robbery and conspiracy to commit armed robbery do not violate double jeopardy as held in State v. Davis, 12-512 (La.App. 5 Cir. 4/24/13), 115 So.3d 68, writ denied, 2013-1205 (La.11/22/13), 126 So.3d 479.
|2nThe Fifth Amendment to the United States Constitution provides that no person shall be “subject for the same offenses to be twice put into jeopardy of life or limb.” State v. Redfearn, 44,709 (La.App. 2 Cir. 9/23/09), 22 So.3d 1078, writ denied, 2009-2206 (La.4/9/10), 31 So.3d 381; State v. Brown, 42,188 (La.App. 2 Cir. 9/26/07), 966 So.2d 727, writ denied, 2007-2199 (La.4/18/08), 978 So.2d 347. The double jeopardy clause was made , applicable to the states through the Fourteenth Amendment, and Article 1, § 15, of the Louisiana Constitution contains a similar guarantee. Id. The guarantee against double jeopardy provides three central constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and, (3) protection against multiple punishments for the same offense. State v. Crandell, 2005-1060 (La.3/10/06), 924 So.2d 122; State v. Knowles, 392 So.2d 651 (La.1980); State v. Redfearn, supra;
The two tests used by Louisiana courts when examining double jeopardy violations are the “distinct fact” or the Blockburger[1] test and the “same evidence test.”[2] The Blockburger test determines whether each *459 crime requires proof of an additional fact which the other does not. State v. Redfearn, supra. If multiple charges constitute double jeopardy under Bloekburger, then the inquiry need go no further, since the constitutional prohibition against double jeopardy will have been abridged.
lüiEven if there is not a finding of double jeopardy under the Bloekburger test, we must look to Louisiana’s “same evidence” test to see if the state’s greater protection is implicated.
The “same evidence” test is articulated as this query: “If all the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the -two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.” State v. Steele, supra (emphasis supplied). The “same evidence” test is broader in concept than Bloekburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct. State v. Steele, supra.
For the following reasons, we conclude that the defendant’s four convictions for armed robbery and two convictions[3] of conspiracy to commit armed robbery do not violate the prohibition against double jeopardy.
The facts established at trial indicate that one week prior to the AT & T store robbery, Bates and Broussard arranged to meet to commit a robbery. On May 3, 2011, Bates drove to Broussard’s home. Broussard then got into Bates’ car and rode with him to the AT & T store. This evidence, standing alone, is sufficient to support Broussard’s conviction for conspiracy to commit the armed robbery at the AT & T store. After arriving at the AT & T |Mstore, Broussard went inside and committed the armed robbery.
Likewise, Broussard told Det. Newnum that he and Bates had agreed to meet on May 6, 2011, at 9:00 a.m. to commit another armed robbery. Bates arrived at a rescheduled time of 3:00 p.m. Broussard got into his car, and the two drove to the Advance America store. Again, this evidence alone provides sufficient evidence to convict Broussard of conspiracy to commit armed robbery. Once at the Advance America store, Broussard entered the store and committed two armed robberies.
First, under the same evidence test, the evidence required to support the defendant’s convictions for conspiracy to commit armed robbery does not support his convictions for armed robbery. A conviction for conspiracy requires proof of an agreement and an act done in furtherance of that agreement, while a conviction for armed robbery requires neither. Thus, in the instant case, Broussard’s and Bates’ plan of robbing AT & T and then their later-hatched plan to rob Advance America, and their subsequent acts (Bates driving Broussard to the respective stores and Broussard arming himself) to carry out those plans support two convictions for conspiracy to commit armed robbery. This. same evidence, however, does not support defendant’s conviction for armed robbery. That conviction is supported by the actual carrying out of the plans, i.e., Broussard robbing the victims at gunpoint.
Second, the United States Supreme Court has explicitly stated that “a substan *460 tive crime and a conspiracy to commit that crime are not the ‘same offense’ for double jeopardy purposes.” United States v. Felix, 503 U.S. 23378, 389, 112 S.Ct. 1377, 1384, 118 L.Ed.2d 25 (1992); see also lannelli v. United States, 420 U.S. 770, 777, 95 S.Ct. 1284, 1289-90, 43 L.Ed.2d 616 (1975) (“Traditionally the law has considered conspiracy and the completed substantive offense to be separate crimes.”); State v. Knowles, 392 So.2d 651, 654-55 (La.1981) (finding no double jeopardy violation for conspiracy to commit first degree murder and first degree murder because “in order to be convicted as a principal [to a crime], there must be proof that .the crime was committed; a conviction for conspiracy does not depend upon the actual commission of the crime, but only upon an act in furtherance of the conspiracy.”).
Finally, La. R.S. 14:26(A) expressly provides that conspiracy is a separate and distinct offense for double jeopardy purposes: “If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one does not bar prosecution for the other.”
The foregoing thus demonstrates that Broussard’s convictions for conspiracy to commit armed robbery are not supported by the same evidence used to prove his armed robbery convictions.
The facts of this case compel a different result from that reached in State v. Rabun, 38,655 (La.App. 2 Cir. 8/18/04), 880 So.2d 184, in which we vacated a defendant’s conviction and sentence for conspiracy to commit armed robbery on the basis that his simultaneous conviction for armed robbery violated his right against double jeopardy. In that ease, the defendant’s armed robbery conviction was. supported by his status as a [^principal to armed robbery. The defendant drove his co-conspirator to the location of the armed robbery and acted as the getaway driver. The same evidence making him a principal to the armed robbery was also used to prove his conspiracy conviction.
We therefore conclude that the defendant’s convictions for armed robbery and convictions for conspiracy to commit armed robbery do not violate the prohibition against double jeopardy. Defendant was neither convicted nor punished twice for the same course of conduct. Accordingly, we find no merit in this argument and thus, no merit in defendant’s second assignment of error.
In his final assignment of error, Brous-sard contends that the trial court erred, as a matter of law, in imposing an excessive, cruel and unusual sentence, particularly considering the lack of justification for imposing consecutive sentences. He argues that the trial court should not have ordered the sentences for his armed robbery convictions, committed on May 3 and 6, 2011, to be served consecutively to one another because they constituted part of a common scheme or plan. Furthermore, Broussard contends, the. trial court should have provided explicit reasons for running the sentences consecutively.
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the |25article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,-855 (La.App. 2 Cir. 2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical *461 compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App. 2 Cir. 8/13/08), 989 So.2d 267. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App. 2 Cir. 8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (LaApp. 2 Cir. 12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const, art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks | Mthe sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App. 2 Cir. 1/24/07), 948 So.2d 379.
Armed robbery is punishable by imprisonment at hard labor for not less than 10 years, nor more than 99 years, without the benefit of parole, probation or suspension of sentence. La. R.S. 14:64(B).
Conspiracy to commit armed robbery is punishable by imprisonment for 10 to 49½ years at hard labor without the benefit or parole, probation or suspension of sentence. La. R.S. 14:26 and 14:64.
La. C. Cr. P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
Concurrent sentences arising out of a single course of conduct are not mandatory. State v. Wallace, 44,880 (La.App. 2 Cir. 1/27/10), 31 So.3d 557; State v. Derry, 516 So.2d 1284 (La.App. 2 Cir. 1987), writ denied, 521 So.2d 1168 (1988). It is within the court’s discretion to make sentences consecutive rather than concurrent. State v. Johnson, 42,323 (La.App. 2 Cir. 8/15/07), 962 So.2d 1126. A judgment directing that sentences arising from a single course of conduct be served consecutively requires ^particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Johnson, supra. Among the factors to be considered are the defendant’s criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant poses an unusual risk of danger to the public, the potential for the defendant’s rehabilitation, and whether the de *462 fendant has received benefit from a plea bargain. State v. Johnson, supra; State v. Barnett, 46,303 (La.App. 2 Cir. 5/18/11), 70 So.3d 1, writ denied, 2011-1612 (La.4/13/12), 85 So.3d 1239.
The trial court did not abuse its discretion in sentencing Broussard. Broussard and Bates planned and executed an armed robbery on May 3, 2011. Three days later, as planned, the twosome met again to commit more robberies. The trial court correctly determined that the crimes occurring on May 3, 2011, were separate and distinct from those occurring on May 6, 2011. Furthermore, the trial court enumerated a thorough list of the factors it considered when imposing Broussard’s sentence, including his criminal, social, educational and work history. The trial court noted that Broussard is a drug addict, but that his crimes were calculated, skillfully completed, violent and resulted in substantial harm to his victims. Additionally, Broussard knowingly created a risk of death or great bodily harm to more than one person and used threats of or actual violence during commission of the offenses. Accordingly, this assignment is without merit.
| ^CONCLUSION
For the foregoing reasons, we conclude that the evidence is sufficient to support only one conviction for conspiracy to commit armed robbery for the May 3, 2011, armed robbery of the AT & T store and the evidence is sufficient to support only one conviction for conspiracy to commit armed robbery for the May 6, 2011, armed robbery of Advance America. We therefore vacate two of defendant’s four convictions and two sentences for conspiracy to commit armed robbery.
The remaining convictions and sentences are affirmed.
TWO CONVICTIONS VACATED; REMAINING CONVICTIONS AND SENTENCES AFFIRMED.

. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

. State v. Steele, 387 So.2d 1175 (La.1980).

. Because we found that the evidence at trial was sufficient to sustain only two convictions for conspiracy to commit armed robbery, thereby vacating two of the convictions of conspiracy, we do not consider the question of whether two of the vacated convictions would have also constituted "double jeopardy” under the "same evidence test."