DREW, J.
|, At jury trial, Patrick Pierce was found guilty as charged of attempted second degree murder and was sentenced to 25 years at hard labor, with only the first 10 years to be served without benefit of probation, parole, or suspension of sentence. The jury also found him guilty as charged of conspiracy to commit second degree murder, for which crime he was sentenced to 15 years at hard labor. The sentences were imposed concurrently.
The defendant’s motion to reconsider sentence was denied.
He now appeals his convictions and sentences. We affirm both convictions and one sentence. We amend the other sentence, and, as amended, affirm.
FACTS
At 6:58 a.m. on April 13, 2014, the Bossier Sheriffs Department received a 911 call from Jerry Sims about a burglary in progress at his home at 176 Jody Lane in Haughton. Jerry told responding officers that a short, white male wearing jeans but no shoes appeared in his bedroom and attempted to shoot him with a rifle. When the gun failed to fire, Jerry grabbed the gun, and the man ran off. Officers found that the rifle had the safety lock on and was loaded with one live cartridge in the chamber. The firearm belonged to Cassie Sims, Jerry’s wife.
In a nearby park, a sheriffs deputy found Pierce, who matched Jerry’s description of the perpetrator, talking on the phone to Cassie, who also happened to be Pierce’s cousin. Officers took statements from Pierce, Jerry, and Cassie, and then turned the matter over to investigators. The next day, Pierce confessed that he and Cassie had conspired to murder Jerry and that 12he had pointed Cassie’s gun at Jerry. Both Pierce and Cassie were arrested. Cassie later pled guilty to attempted manslaughter and was sentenced to 10 years at hard labor.
Pierce was charged with attempted second degree murder (La. R.S. 14:30.1 and La. R.S. 14:27) and conspiracy to commit second degree murder (La. R.S. 14:30.1 and La. R.S. 14:26).
Jerry filed a motion to suppress his statement to police. After a contradictory hearing, the trial court found that the testimony by law officers and the evidence presented established that Pierce’s statement to police was free, voluntary, and made after being fully advised of his rights. The motion to suppress his statements was denied.[1]

*213
Testimony and Evidence Elicited at Jury 'D ial

Jerry testified that the night before the crime, April 12, 2014, his daughter, Cassie’s daughter, and their son spent the night at the home of Pierce and his wife, Danielle, while he and Cassie went to a movie.
Around 6:00 a.m. the next morning, barking dogs woke Jerry. He used the bathroom before returning to bed, whereupon Cassie entered the room, wanting sex. He said that she left the bedroom door open and the light was off. After they finished, Jerry said he moved to turn on the bedroom light, even though Cassie told him to leave it off. When he turned back around, he saw a man pointing a rifle at him. He heard a click, and saw lathe gun move forward. When the gun did not fire, he grabbed it from the man, who ran off.
He chased the man, who got away. Jerry got dressed, called 911, and later advised that the intruder was a short, shoeless white male, in jeans with a shirt over his face, possibly a teenager. He did not recognize the intruder.
Jerry testified:
• when Cassie said the gun was hers, he suspected she had set him up;
• the gun was usually kept in its case, hidden behind the bedroom door;
• twice before, he suspected Cassie of poisoning him; and
• Cassie did not seem at all upset by the attempted shooting.
Cassie testified:
• she was sentenced to 10 years for a plea to attempted manslaughter;
• she remembered giving a statement to the investigators;
• she no longer recalled what she said or the plan to kill her husband;
• after picking up the defendant at Waffle House, she drove him back to her home;
• they talked while her husband slept in the bedroom;
• she showed her rifle to the defendant;
• when Jerry get up, she told the defendant he could sleep on the couch or in her son's bedroom, then she went into the master bedroom;
• after she and Jerry had sex, Jerry turned on the light;
• she saw the defendant in the bedroom with her rifle pointed at Jerry;
• she heard a click and then saw Jerry grab the rifle;
• the defendant ran away, leaving his shoes in the hallway;
• she put the shoes in her vehicle, but did not recall why she did so;
• after her statement, she picked up her children from the Pierce home;
14* the next day she gave a statement to the police;
• she signed a consent waiver for the search of her phone;
• she didn’t hear from the defendant while he was in jail.[2]
*214 Jerry’s daughter, Amber Sims, age 18 at trial, testified:
• in February 2015, she saw Cassie open the letter and read it;
• Cassie then handed the letter to her to read;
• she identified the letter as the one at issue;
• Cassie told her that she put 60 prescription pills in Jerry’s coffee;
• Cassie had once put something in her father’s burrito;
• these events occurred a few months before the attempted murder; and
• she didn’t tell her dad because she did not think he would believe her.
Sergeant Terry Temple and Deputy Mike Edmonds testified that they responded to the 911 call. Temple took statements from Jerry and Cassie, while Edmonds patrolled the area for the suspect, whom he found hiding in a portable toilet about a half mile away. The defendant was wearing jeans but no shoes, talking on his phone to Cassie. Temple directed Edmonds to bring the defendant to the Sims home, whereupon his rights were read to him.
Cassie’s firearm, which Jerry identified as the one pointed at him, was a .243 Rossi rifle by Braztech. It was loaded with one live cartridge. The officers recovered a box of .243-caliber ammo with one cartridge missing.
|fiThe defendant admitted being at the Sims home, but denied pointing a gun at Jerry. He told them that he left his shoes in the Simses’ spare bedroom, but Temple found the shoes in Cassie’s vehicle.
Temple did not feel he had enough information to constitute probable cause for arrest, but he suspected that Cassie had tried to have her husband killed. Temple released everyone and turned the matter over to detectives for further inquiry.
The next day, Bossier Parish detectives called the defendant to the station to be interviewed. Pierce signed consent forms allowing officers to search his cellphone, take DNA swabs, and fingerprint him.
Detective Becky Fohl testified that test results did not reveal any viable fingerprints from the rifle, even though Cassie owned the gun and Jerry grabbed it from the suspect.
Michelle Vrana, accepted by the trial judge as an expert in DNA analysis, testified that no viable DNA was found on the rifle.
Det. Mack found no pertinent text messages on defendant’s phone.
After being advised of his rights and having signed a written statement of rights and a waiver form, Pierce was interviewed by Detectives Debra McKay, Kay Ward, Bruce Bletz, and Sean Phillips. His four-hour recorded interview was played for the jury.
Det. McKay testified that the defendant initially denied there was any plan to kill Jerry. He admitted that he heard Cassie wishing Jerry were dead, but said that he did not believe that she was serious. He had been at the Sims home to console Cassie because she and Jerry had been having problems. They chatted while Jerry was asleep in the master bedroom. Cassie later went into the bedroom when she heard Jerry get up. The ^defendant said that he left when he heard the Simses *215 arguing, and that he went down the road to call a friend to pick him up.
Lt. Bletz testified that the defendant eventually confessed that he and Cassie discussed various plans to kill Jerry. One plan was to make it look like a home invasion. He confessed getting the gun from Cassie and pointing it at Jerry. He changed his mind and ran off.
Capt. Phillips testified:
• he took Cassie’s confession admitting to involvement in the crimes;
• she wanted the defendant to kill Jerry, and they planned the crime;
• she left her children with the defendant’s wife, Danielle;
• she picked up the defendant and drove him to her home, as Jerry slept;
• she gave the defendant the gun;
• their plan was to make it appear as a home invasion or robbery;
• the defendant would put a pillow over Jerry’s head and shoot him;
• she had promised the defendant sex for killing Jerry; and
• what saved Jerry’s life was defendant’s inability to work the safety.
Pierce argued that the state failed to establish that he had specific intent to kill because no shot was fired and Jerry was not shot. He argued that there was no evidence of any agreement to murder Jerry.
A unanimous jury found the defendant guilty of both charges.
Pierce appeared for a probation revocation hearing on a previous conviction and sentencing on the current charges. He admitted violating his probation, and the court imposed the underlying sentence of three years at hard labor. The court then sentenced the defendant on these instant charges.
The trial court summarized the defendant’s presentence investigation:
17» The defendant wrote that he regretted the part he played in these crimes, but he was found guilty of something that he did not do.
• The trial court found that the defendant made no showing of remorse for his actions and took no responsibility for them.
• The victim requested that the maximum sentence be imposed.
• The defendant, age 45, had been convicted of possession of marijuana, as well as felony convictions for burglary, receiving stolen things, aggravated battery, and illegal possession of a stolen firearm.
• The defendant’s prior periods of probation were unsuccessful.
• The defendant was a fourth-felony habitual offender.
• He dropped out of high school and never earned a G.E.D.
• He was gainfully employed at the trailer park where he lived.
• He was married and had two daughters, ages 26 and 9.
• He admitted to substance abuse since age 13.
After considering these facts in light of the sentencing guidelines in La. C. Cr. P. art. 894.1, the trial judge found that any lesser sentences would deprecate the seriousness of the offenses committed.
The trial court sentenced the defendant on attempted second degree murder to serve 25 years at hard labor, with the first 10 years to be served without benefits. On conspiracy to commit murder, he was sentenced to serve 15 years at hard labor concurrently. His probation revocation sentence was ordered to be served consecutively with the instant two sentences.
*216 Defendant unsuccessfully moved for reconsideration of sentence, asserting that he was essentially serving a life sentence; that he had no specific intent to kill; that he was not the worst offender of this type; and that these acts were not the worst types of these type of offenses.
JgDISCUSSION

Sufficiency of Evidence

The defendant argues that the testimony and evidence was conflicting and unreliable, that there was no evidence that he had specific intent to kill, and that there was no evidence of an actual agreement to commit the crime and an act in furtherance, in order to support a conviction for conspiracy to commit murder. Not surprisingly, the state replies that the evidence was sufficient to support the convictions, particularly because of the confessions by Cassie and the defendant.
Our law is well settled as to appellate review of insufficiency claims.[3]
19Attempted second degree murder is a violation of La. R.S. 14:27 and La. R.S. 14:30.1. La. R.S. 14:27 provides, in pertinent part, that an attempt to commit a crime is when:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B.(l) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
*217 C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
Attempted second degree murder requires proof, beyond a reasonable doubt, that the defendant had the specific intent to kill a human being and that he committed an overt act in furtherance of that goal. La. R.S. 14:27 and La. R.S. 14:30.1; See State v, Tillman, 47,386 (La.App. 2d Cir. 8/8/12), 104 So,3d 480, writ denied, 12-2035 (La. 1/25/13), 105 So.3d 714.
Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). As a state of mind, specific intent need not be proven as a fact, but may be inferred from the circumstances of the offense and the defendant’s actions. State v. Allen, 41,548 (La.App. 2d Cir. 11/15/06), 942 So.2d 1244, writ denied, 07-0530 (La. 12/7/07), 969 So.2d 619.. Specific intent may be inferred from the circumstances of the offense and the defendant’s act of deliberately pointing hna gun and firing it at a person. State v. Williams, 44,977 (La.App. 2d Cir. 1/27/10), 32 So.3d 902, writ denied, 10-0368 (La. 9/24/10), 45 So.3d 1071; State v. Freeman, 45,127 (La.App. 2d Cir. 4/14/10), 34 So.3d 541, mii denied, 10-1043 (La. 11/24/10), 50 So.3d 827. The state has the burden to prove, beyond a reasonable doubt, that the defendant had the specific intent 'to kill and that he committed an act in furtherance of that goal. State v. Mitchell, 39,305 (La.App, 2d Cir. 2/17/05), 894 So.2d 1240, writ denied, 05-0741 (La. 6/3/05), 903 So.2d 457. A defendant’s confession is direct evidence, for it is an acknowledgment of guilt for which no inference need be drawn.’ La. R.S. 15:44; State v. Allen, supra.
The determination of whether the requisite' intent is present in a criminal case is for the trier of fact. State v. Allen, supra.
Criminal conspiracy, is defined in La. R.S. 14:26, as follows:
A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
Criminal conspiracy requires an agreement or combination of two or more persons for the specific purpose of committing any crime, an act in furtherance of the object of the agreement or combination, and specific intent. State v. Passaniti, 49,-075 (La.App. 2d Cir. 6/27/14), 144 So.3d 1220, writ denied, 14-1612 (La. 3/6/15), 161 So.3d 14. The overt act need not be unlawful; it may be any act, innocent or illegal, accompanying or following the agreement, which is done in furtherance of the object of the agreement. State v. Broussard, 49,-240 (La,App. 2d Cir. 10/1/14), 149 So.3d 446. Elements of conspiracy may be proven by direct or circumstantial In evidence. State v. Davis, 12-512 (La. App. 5th Cir. 4/24/13), 115 So.3d 68, writ denied, 13-1205 (La. 11/22/13), 126 So.3d 479. For purposes of conspiracy, specific intent may be inferred from the circumstances of the transaction and actions of the defendant. State v. Broussard, supra.
The evidence as to both crimes is overwhelming.

*218
Excessiveness

Our law is well settled as to review of sentences for excessiveness.[4]
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:30.1(B). An attempt to commit second degree murder is punishable at hard labor for not less than 10, nor more than 50 years without benefit of parole, probation, or 112suspension of sentence. La. R.S. 14:27(D)(l)(a). Whoever is a party to a criminal conspiracy to commit any crime shall be fined or imprisoned, or both, in the same manner as for the offense contemplated by the conspirators; provided, however, whoever is a party to a criminal conspiracy to commit a crime punishable by death or life imprisonment shall be imprisoned at hard labor for not more than 30 years.[5] La. R.S. 14:26(C).
The facts presented clearly established that the defendant conspired with Cassie to commit a murder, and that he specifically intended to murder Jerry. The defendant’s ineptitude in committing murder does not militate for a lesser sentence. The defendant has an extensive history of criminal convictions, of probation violations and *219 an inclination against .rehabilitation. The defendant was on probation when he committed the instant felonies.
The sentences fall within the statutory-guidelines. Jerry planned and attempted to kill an unarmed man in exchange for promised sex from the man’s wife. These concurrent sentences of 25 years and 15 years are not excessive in light of the circumstances of this case, are not disproportionate to the crimes committed, and do not shock the sense of justice. ,
ERROR PATENT
For the conviction of attempted second degree murder, the trial court restricted benefits for parole, probation, and suspension of sentence for 113only 10 years, whereas La. R.S. 14:27 does not allow any restriction of benefits. The sentence is thus illegally lenient.
This is harmless error. La. R.S. 15:301.1(A) provides in pertinent part that the failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole or suspension of sentence. There is no need to remand for correction of the sentencing error. When a district court fails to order statutorily mandated service of sentence without benefits, the sentence will automatically be served without benefits for the required time period. See State v. Williams, 00-1725 (La. 11/28/01), 800 So.2d 790.
We order that the entirety of the 25-year hard labor sentence be served without benefits. We also order that the trial court minutes be amended to reflect this sentencing adjustment.
DECREE
Both of defendant’s convictions are affirmed. The sentence for criminal conspiracy is affirmed.
The sentence for the conviction of attempted second degree murder is amended to reflect that all of the sentence shall be served without benefits. As amended, that sentence is affirmed.
AFFIRMED IN PART; AMENDED IN PART, AND, AS AMENDED, AFFIRMED.

. Det. McKay testified that he read the defendant his rights and Pierce signed a written *213 statement and waiver of rights, and that Pierce:
• never requested an attorney and never asked to stop the interview;
• was not in handcuffs and had not been arrested;
• denied being under the influence of alcohol or any drugs; and
• did not appear to be intoxicated, and spoke in a rational manner.

. Two law officers testified contrary to this denial by Cassie:
(1) Detective Shannon Mack testified that Cassie’s phone records included a text from the defendant to Cassie on the evening after the attempted murder, asking *214 if Cassie was still going to have sex with him after all he had gone through that morning.
(2) Lindsey Boggs, a corrections officer from Bossier Parish Maximum Security, identified a letter as being authentic, being sent from the defendant, while an inmate at the facility. Boggs testified that the letter was mailed to Cassie at her home address.

. The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court does not assess the credibility of witnesses or reweigh evidence, and accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442; State v. Broome, 49,004 (La. 4/9/14), 136 So,3d 979, writ denied, 14-0990 (La. 1/16/15), 157 So.3d 1127; State v. Moore, 44,429 (La.App, 2d Cir. 8/26/09), 20 So.3d 1137.
A witness's testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. State v. Dorsey, 10-0216 (La, 9/7/11), 74 So.3d 603; State v. Davis, 02-1043 (La. 6/27/03), 848 So.2d 557. In the absence of internal contradiction or irreconcilable conflict with physical evidence, that witness's testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. State v. Dorsey, supra-, State v. Washington, 46,913 (La.App. 2d Cir. 2/1/12), 86 So.3d 697, writ denied, 12-1407 (La, 11/21/12), 102 So.3d 54. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Moore, supra.
When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Broome, supra. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. Id.

. The trial court has wide discretion in imposing sentence within minimum and maximum limits allowed by the statute; therefore, a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Hardy, 39,233 (La.App. 2d Cir. 1/26/05), 892 So.2d 710; State v. Young, 46,575 (La.App. 2d Cir. 9/21/11), 73 So.3d 473, writ denied, 11-2304 (La. 3/9/12), 84 So.3d 550. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Zeigler, 42,661 (La.App. 2d Cir. 10/24/07), 968 So.2d 875. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque, 46,515 (La.App. 2d Cir. 9/21/11), 73 So.3d 1021, writ denied, 11-2347 (La. 3/9/12), 84 So.3d551.
The defendant’s personal history and criminal record, as well as the seriousness of the offense, are some of the elements considered, but the trial court is not required to weigh any specific matters over other matters. State v. Moton, 46,607 (La.App. 2d Cir. 9/21/11), 73 So.3d 503, writ denied, 11-2288 (La. 3/30/12), 85 So.3d 113; State v. Caldwell, 46,645 (La. App. 2d Cir. 9/21/11), 74 So.3d 248, writ denied, 11-2348 (La. 4/27/12), 86 So.3d 625. All convictions and all prior criminal activity may be considered as well as other evidence normally excluded from the trial. State v. Platt, 43,708 (La.App. 2d Cir. 12/3/08), 998 So.2d 864, writ denied, 09-0265 (La. 11/6/09), 21 So.3d 305. Maximum sentences are generally reserved for the worst offenses and offenders. State v. Taylor, 41,898 (La.App. 2d Cir. 4/4/07), 954 So.2d 804.
A sentence can be constitutionally excessive, even when it falls within statutory guidelines, if (1) the punishment is so grossly disproportionate to the severity of the crime that when viewed in light of the harm done to society, it shocks the sense of justice; or, (2) it serves no purpose other than to needlessly inflict pain and suffering. State v. Fatheree, 46,686 (La.App. 2d Cir. 11/2/11), 77 So.3d 1047; State v. Lobato, 603 So,2d 739 (La. 1992); State v. Livingston, 39,390 (La.App. 2d Cir. 4/6/05), 899 So.2d 733; State v. White, 37,815 (La.App. 2d Cir. 12/17/03), 862 So.2d 1123.

. La. R.S. 14:26(0, on its face, places no restrictions on the availability of parole for a murder conspirator and does not directly or indirectly reference parole. The "provided however” clause indicates both the term "thirty years” and the manner "at hard labor” of imprisonment for individuals convicted of conspiracy to commit a crime punishable by death or life imprisonment. To accept the defense's suggestion that the "in the same manner” language of the previous clause be construed as limiting a murder conspirator’s eligibility for parole would wholly vitiate the “provided however" clause which appears to be properly construed as an exception to the first clause. State v. Ferguson, 393 So.2d 710, 711-712 (La. 1981); State v. Lang, 13-21 (La. App. 5th Cir. 10/9/13), 128 So.3d 330, writ denied, 13-2614 (La. 5/2/14), 138 So.3d 1244.