CARAWAY, J.
| iTeddy Ray Randle was convicted of armed robbery and conspiracy to commit armed robbery. He was subsequently sentenced to concurrent sentences of 12 years at hard labor without benefits for the armed robbery conviction and 6 years at hard labor without benefits for the conspiracy to commit armed robbery conviction. Randle appeals his convictions and armed robbery sentence. We affirm.

Facts

On July 1, 2018, Teddy Ray Randle was charged by bill of information with one count of armed robbery and one count of conspiracy to commit armed robbery after the victim, Roderick McDonald, identified Randle as one of two men who barged through the door of his house on June 11, 2013, and took money from him at gunpoint. McDonald claimed that Randle’s accomplice, Tysman Moore, had earlier knocked on his door requesting marijuana. When McDonald denied the request, Moore left but returned with Randle, who was armed with a black pistol. After the two men forced entry into McDonald’s home, Randle hit him with the pistol and choked him while demanding money. McDonald gave Randle $100 as Moore ransacked a bedroom before taking money from a piggy bank. The two men fled the scene from a side door of the home. A neighbor, Lillie Washington, was an eyewitness to the men entering and exiting the home. She called 911 and identified the men as Randle and Moore.
Moore was apprehended by police as he ran from the home. Moore had a large amount of change and a Eurodollar that McDonald identified as |2coming from the piggy bank. Randle surrendered to police custody the following day.
Randle was charged and convicted of the charged offenses by a unanimous jury. He filed motions for a new trial and post-verdict judgment of acquittal, arguing that the state failed to sufficiently establish that he committed the crimes charged, because the victim offered testimony that conflicted with the statements made to the police at the time of the incident. The trial court denied the motions.
On September 29, 2014, the trial court sentenced Randle to concurrent sentences of 12 years at hard labor without benefit of parole, probation, or suspension of sentence on the armed robbery, and 6 years at hard labor without benefit of parole, probation, or suspension of sentence for the conspiracy to commit armed robbery. Randle filed a motion to reconsider the denial of the earlier motions as well as the imposed sentences. Upon the trial court’s denial of the motion, this appeal followed.

Discussion

In his first assignment of error, Randle argues that the state failed to prove beyond a reasonable doubt that he committed either offense of conviction. Specifically, Randle contends that the only true eyewitness to the alleged armed rob *469 bery was McDonald, a convicted felon with prior drug convictions, who made several conflicting statements about the events surrounding the choke hold and attack with the gun. Randle also argues -that Washington could not see the events taking place inside the house. Finally, IsRandle asserts that the state submitted no evidence at all that he committed conspiracy to commit armed robbery with Moore.
At trial, the following facts were gleaned from witness testimony. McDonald testified that on June 11, 2013, he had just awoken at his home when Moore knocked on his door, requesting marijuana. McDonald denied Moore’s request and closed the front door. Shortly after, McDonald heard another knock at the door. When he cracked the door to answer it, Randle and Moore “bum rushed” or barged through the doorway. McDonald testified that the two men “pushed me on the couch.” He recalled that Randle was armed with a black pistol and placed him in a choke hold while they were both sitting on his couch. McDonald identified Randle as the defendant in court. According to McDonald, Randle hit him with the pistol “on the left side of my head,” and demanded money while choking him. McDonald testified that Randle threatened to kill him if he did not give him money. McDonald retrieved $100 in $20 bills from inside the pocket of his pants that were lying on the floor in the living room in front of the couch. He gave the money to Randle.
McDonald testified that in the meantime, Moore was ransacking a bedroom in the house looking for money; he took all of the change from a piggy bank in the bedroom. McDonald testified that Randle and Moore exited his home through the “back door,” which was located on the side of the house. He did not call the police because his neighbor had already done so. She came over to his house after the incident to see if he was all right.
|4On cross-examination, McDonald admitted that he had been convicted of possession of marijuana, second offense and possession of cocaine.
Lillie Washington testified that on June 11, 2013, she lived right across the street from McDonald. That morning, Washington saw two individuals approach McDonald’s house two different times. The first time, the individuals did not get inside the house. Shortly after they first knocked on the front door, Washington saw the two individuals return to the front door, coming from different directions. Washington saw McDonald crack the door, and she saw the two individuals barge into the house. Washington identified one of the individuals she saw as Randle, whom she knew as Teddy Randle, or “Teddy Boo.” Randle lived close by, according to Washington. She recalled that Randle was wearing a hoodie, and had his hands in his pockets prior to forcing his way inside McDonald’s home. Washington testified that she heard sounds from inside the home, which she perceived to be a struggle taking place. She heard things breaking and being knocked over. Washington first called McDonald’s girlfriend who was also an occupant of the home, and then she called 911. She estimated that the two men were in the house for five minutes before she saw them leave, running out of the side door of the house and continuing down the street running together. Washington denied that she went to McDonald’s house after the events.
Detective Richard Pace testified that on the morning of June 11, 2013, he was employed as a detective of the Bastrop Police Department and |r,responded to a home invasion at North Todd Street in Bastrop, Louisiana. Pace spoke with Me- *470 Donald at the scene and took his statement. Pace testified that McDonald appeared “very shaken up” and identified the two assailants as Moore and Randle. Washington also corroborated their identity.
Pace testified that McDonald was adamant that Randle had a gun during the incident and that he used the weapon to strike him. He surveyed McDonald’s home and saw a ransacked bedroom which belonged to a child. In the bedroom, Pace observed that the mattress and box springs were separated and the dresser drawers were pulled and their contents strewn throughout the room. A piggy bank was missing change. McDonald told Pace that change and a “Eurodollar” were missing from the piggy bank.
Pace testified that Moore was located and arrested. Randle turned himself in the next day. On Moore’s person were 29 nickels, 9 dimes, 225 pennies, two bags of marijuana, a “black pistol grip,” a cigarette lighter, and one “Eurodollar.” The coins were admitted into evidence.
On cross-examination, Pace testified that McDonald initially told him that both suspects hit him, slapped him around and demanded money. At the time of these statements, McDonald complained that his throat and side of his neck hurt. He recalled that McDonald had a small knot on his head.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La. App. 2d Cir. 1/9/08), 974 So.2d 181, writ denied, 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2d Cir. 1/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2d Cir. 2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App. 2d Cir. 5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 09-0372 (La.11/6/09), 21 So.3d 299; State v. Parker, 42,311 (La.App. 2d Cir. 8/15/07), 963 So.2d 497, writ denied, 07-2053 (La.3/7/08), 977 So.2d 896.
Where there is conflicting testimony about factual matters, the resolution of *471 which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Speed, supra; State v. Allen, 36,180 (La.App. 2d Cir. 9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35.
La. R.S.14:64 provides:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
La. R.S. 14:26 provides in relevant part:
A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of | Ssuch parties does an act in furtherance of the object of the agreement or combination.
B. If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other.
Criminal conspiracy requires an agreement or combination of two or more persons for the specific purpose of committing any crime, an act in furtherance of the object of the agreement or combination, and specific intent. State v. Passaniti, 49,075 (La.App.2d Cir. 6/27/14), 144 So.3d 1220, writ denied, 14-1612 (La.3/6/15), 161 So.3d 14. The overt act need not be unlawful; it may be any act, innocent or illegal, accompanying or following the agreement, which is done in furtherance of the object of the agreement. State v. Broussard, 49,240 (La.App. 2d Cir. 10/1/14), 149 So.3d 446. Elements of conspiracy may be proven by direct or circumstantial evidence. State v. Davis, 12-512 (La.App. 5th Cir. 4/24/13), 115 So.3d 68, writ denied, 13-1205 (La. 11/22/13), 126 So.3d 479. For purposes of conspiracy, specific intent may be inferred from the circumstances of the transaction and actions of the defendant. Broussard, supra. Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. State v. Daniels, 607 So.2d 620 (La.App. 2d Cir.1992). The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every other reasonable hypothesis of innocence. La. R.S. 15:438.
|flThe evidence presented at trial is sufficient to support Randle’s conviction for armed robbery. The state presented two eyewitness identifications of Randle as one of the individuals who entered the victim’s home. Additionally, the victim testified that while armed with a gun, Randle forced entry into his home, beat and choked him, demanded and took money from him, and threatened to kill him if he did not comply with his demands. The jury chose to believe the identifications as well as the victim’s testimony regarding *472 the events that transpired after the men gained entrance into the home. Moore’s possession of coins which were identified as coming from the home corroborates the victim’s claims and the jury’s conclusions.
The evidence presented at trial is also sufficient to support Randle’s conviction for conspiracy to commit armed robbery. The testimony of the eyewitnesses, which the jury accepted as credible, showed that Moore had first unsuccessfully attempted to gain entry into McDonald’s home before departing. Shortly thereafter, the witnesses again saw Randle and Moore “bum rush” entry into McDonald’s home before exiting the home running away together after committing an armed robbery. Ran-dle possessed a gun. From these circumstances, the jury could have reasonably inferred that it was after his unsuccessful attempt to gain entry into McDonald’s home that Moore enlisted the aid of the armed Randle for the purpose of gaining entry into the house with the specific intent to rob McDonald of money. Thus, the evidence was sufficient to prove that Ran-dle and Moore acted upon their agreement to commit armed robbery by approaching and entering the home |intogether, acting in concert to obtain money from the victim, and leaving the home at the same time. Therefore, this assignment of error is without merit.
In his second assignment of error, Randle contends that his convictions for armed robbery and conspiracy to commit armed robbery constitute a violation of constitutional prohibitions against double jeopardy. Specifically, Randle argues that the jury convicted him “based on the exact same evidence for both convictions, despite the elements of the crime being different.” Randle urges that the state provided no evidence of prior meetings or agreements between the two perpetrators and that the testimony of McDonald and Washington established only that an armed robbery occurred.
The Fifth Amendment to the United States Constitution provides that no person shall be subject for the same offenses to be twice put into jeopardy of life or limb. Broussard, supra; State v. Redfearn, 44,709 (La.App. 2d Cir. 9/23/09), 22 So.3d 1078, writ denied, 09-2206 (La.4/9/10), 31 So.3d 381. The double jeopardy clause was made applicable to the states through the Fourteenth Amendment, and Article 1, § 15, of the Louisiana Constitution contains a similar guarantee. Id. The guarantee against double jeopardy provides three central constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and, (3) protection against multiple punishments for the same offense. State v. Crandell, 05-1060 (La.3/10/06), 924 So.2d 122; State v. Knowles, 392 So.2d 651 (La.1980); Broussard, supra.
|nThe two tests used by Louisiana courts when examining double jeopardy violations are the “distinct fact” or the Blockburger[1] test and the “same evidence test.”[2] The Blockburger test determines whether each crime requires proof of an additional fact which the other does not. Broussard, supra. If multiple charges constitute double jeopardy under Block-burger, then the inquiry need go no further, since the constitutional prohibition against double jeopardy will have been abridged. Id.
*473 Even if there is not a finding of double jeopardy under the Blockburger test, Louisiana law requires the courts to look to the “same evidence” test which dictates that, if all the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. Steele, supra. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial. Id. The “same evidence” test is broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct. Id.
Under Louisiana law, armed robbery and conspiracy to commit a substantive offense such as armed robbery are separately defined crimes under La. R.S. 14:64 and La. R.S. 14:26. Under these statutes, armed robbery and conspiracy to commit armed robbery require proof of at least one other fact that the others do not. Davis, supra; State v. Grace, 10-1222 (La.App. 3d Cir. 4/6/11), 61 So.3d 812, writ denied, 11-0961 (La.10/21/11), 73 So.3d 382.
Further, the United States Supreme Court has explicitly stated that a substantive crime and a conspiracy to commit that crime are not the same offense for double jeopardy purposes. United States v. Felix, 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992); see also Iannelli v. United States, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), and Knowles, supra, in which the court found no double jeopardy violation for conspiracy to commit first degree murder and first degree murder because in order to be convicted as a principal, there must be proof that the crime was committed; a conviction for conspiracy does not depend upon the actual commission of the crime, but only upon an act in furtherance of the conspiracy.
Finally, La. R.S. 14:26(A) expressly provides that conspiracy is a separate and distinct offense for double jeopardy purposes and that the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one does not bar prosecution for the other. Broussard, supra.
In this case, the state proved the elements of conspiracy, acts in furtherance of the agreement to commit armed robbery. Those acts involved Moore’s actions in obtaining Randle’s aid for the entry of McDonald’s home and for the use of Randle’s weapon. On the other hand, the evidence presented for the armed robbery conviction included proof that Randle took money from McDonald or from his immediate control, by use of force or intimidation, while armed with a dangerous weapon. Because the evidence | iswas sufficient to support both convictions, this assignment of error is without merit.
In his final assignment of error, Randle argues that the trial court abused its discretion in sentencing him 12 years’ imprisonment for the armed robbery conviction.[3] Specifically, Randle notes his young age of 21 at the time of sentencing, his close family ties, lack of a prior criminal record and voluntary surrender to law enforcement the day after the alleged incident. Randle also complains that there was no discussion about the likelihood of his rehabilitation, but acknowledges the court’s concern with his drug problems and recommendation that he complete a drug treatment program. Randle also argues that the victim had no visible injuries and lost only $100.
*474 Because Randle’s motion to reconsider sentence raised only a bare claim of exces-siveness of the sentence imposed, he is limited to review of his sentences on this ground only. La.C.Cr.P. art. 881.1(E); State v. Mims, 619 So.2d 1059 (La.1993); State v. Humphries, 48,235 (La.App.2d Cir.9/25/13), 124 So.3d 1177.
Prior to sentencing Randle, the trial court noted its consideration of the presen-tence investigation report as well as letters submitted on Randle’s behalf. The court considered Randle’s education, job history and denial of responsibility for what happened. The lack of aggravating factors as well as mitigating factors such as Randle’s lack of a criminal record, age and law abiding life, were noted by the court. The court also observed that Randle 114did not “seem to be the major perpetrator of the offense,” but had pending charges for aggravated second degree battery that he received while in jail. Even with the existing mitigating factors, the court considered Randle’s actions to have been a “serious crime.”
A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166. Absent a showing of manifest abuse of discretion, an appellate court may not set aside a sentence as excessive. State v. Kidd, 45,638 (La.App.2d Cir.11/3/10), 55 So.3d 90.
We find no abuse of discretion in Ran-dle’s armed robbery sentence. Despite his young age and lack of prior criminal history, the present offense involved a serious crime against another person which involved Randle’s use of a gun and threats of death for only a small amount of money. For the armed robbery conviction, Randle faced maximum sentencing exposure of 99 years. The near minimum sentence is well within the range provided by the sentencing statute and appropriately tailored to this defendant’s actions. We cannot say that it shocks the sense of justice or is grossly out of proportion with the seriousness of the offense.. Therefore, this assignment of error is without merit.
| ^Decree
For the foregoing reasons, Randle’s convictions and sentences are affirmed.
AFFIRMED.

. This test has its origins in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

. This test is set forth in State v. Steele, 387 So.2d 1175 (La.1980).

. Randle does not appeal the conspiracy sentence.