Judgment rendered February 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,497-KA
No. 55,498-KA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JOHN L. FUSSELL, SR.                        Appellant

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of Tensas, Louisiana
Trial Court Nos. 98,815 and 102,504

Honorable Laurie Reis Brister, Judge

* * * * *

H2 LAW, LLC                                 Counsel for Appellant
By: Justin C. Harrell

JAMES EDWARD PAXTON                         Counsel for Appellee
District Attorney

LINDA LEE KINCAID WATSON
JOHN DURHAM CRIGLER JR.
BRADLEY T. SLOANE
Assistant District Attorneys

* * * * *

Before COX, THOMPSON, and HUNTER, JJ.

**HUNTER, J**.

Defendant, John L. Fussell, Sr., was charged by bill of indictment as a principal to second degree murder, in violation of La. R.S. 14:30.1 and 14:24, and by bill of information with conspiracy to commit second degree murder, in violation of La. R.S. 14:30.1 and 14:26. Following a jury trial, defendant was convicted of being a principal to second degree murder by a non-unanimous jury vote (11-1). The jury voted unanimously to find defendant guilty of conspiracy to commit second degree murder. Subsequently, he was sentenced to life in prison at hard labor without the benefit of probation, parole, or suspension of sentence for the murder conviction and to 15 years' imprisonment at hard labor. For the following reasons, we vacate defendant's conviction and sentence for principal to second degree murder, and we affirm his conviction and sentence for conspiracy to commit second degree murder.

## FACTS

On June 5, 2017, Ricardo Miles ("the victim") was reported missing by his mother, Sara Miles. According to Ms. Miles, the victim had been missing since June 2, 2017, and he had last been seen in the company of his co-worker, Derrick Savage. The victim, Savage, and defendant, John Fussell, Sr., worked together at Pitts Farms in Tensas Parish, and Ms. Miles reported Savage picked the victim up in a white truck in Newellton, Louisiana. Fliers were circulated throughout the community seeking information about the whereabouts of the victim.

Subsequently, officers of the Tensas Parish Sheriff's Office ("TPSO") interviewed Savage. He admitted he picked the victim up in Newellton on June 2, 2017. Savage stated they purchased beer and rode around in his

truck for a short while. He also stated he dropped the victim off at an intersection in nearby St. Joseph, Louisiana.

During the course of the investigation, the TPSO obtained the cell phone records of the victim and Savage. The records indicated the victim and Savage were both near Hurricane Lodge in Tensas Parish at 7:42 p.m. on June 2, 2017. TPSO deputies searched the area but were unable to locate the victim. However, the search revealed tire marks from a track hoe. The investigation stalled with the victim's whereabouts remaining unknown.

In 2018, Dana McDaniel went to the TPSO and reported she had information about the victim's disappearance.[1] McDaniel told the deputies June 2, 2017, she was working at Hurricane Lodge, and Savage picked her up from the lodge "to go for a ride." When she went outside, the victim was in the truck with Savage. She got into the back seat, and they rode around drinking beer before Savage drove to an isolated area off Crooked Bayou Road in Tensas Parish. According to McDaniel, when they arrived at the area, she saw defendant "standing on the track hoe on the tracks." Savage exited the truck, walked to a nearby area, and "hollered for" the victim to exit the vehicle purportedly to look at an alligator. When the victim exited the vehicle and walked to where Savage was standing, Savage pulled a handgun from his waistband and shot the victim in the back of the head. She stated the victim fell to the ground and did not move again. After shooting

---

[1] In June 2017, McDaniel and Savage were involved in a romantic relationship. At trial, McDaniel testified she worked with Savage, defendant, and the victim. She also testified Savage sold crystal methamphetamine, and she used the drug and sold it for Savage. McDaniel stated Savage "was paranoid" because he believed either the victim or defendant "was working for the law." At some point, defendant and Savage had a "conflict," and Savage "pulled a gun on" defendant. She stated defendant left the premises and did not return to work "for several days."

2

the victim, Savage "turned around, he shakes [defendant's] hand, they laugh about something." Thereafter, Savage returned to the vehicle with blood on his shirt and drove her back to Hurricane Lodge.

McDaniel further testified before he left her at the lodge, Savage warned her he would "come after" her and her family if she told anyone what she had witnessed. She stated she understood Savage to mean he "would kill me or my family." She also testified Savage told her he was going to return to the scene to dispose of the body, and when he returned to the lodge approximately two hours later, he was "wet and muddy," and he told her he had "disposed of the body." McDaniel stated she did not witness defendant "do anything to the body at all."

During her testimony on cross-examination, McDaniel stated she did not question defendant's presence on the track hoe in the remote area. She stated:

> John worked for 'em. He worked on their heavy equipment and stuff, I wasn't thinking anything other than him. *** They were getting ready to sell the place. I thought he might've been out there working.

McDaniel testified she did not hear defendant say anything at the time of the shooting, and she did not hear what Savage said to him after the shooting. She stated defendant was still standing on the track hoe when the victim was shot. McDaniel testified she did not help Savage dispose of the victim's body, and she did not know what happened after she left the scene. McDaniel admitted she did not know how defendant got to the remote location, she did not know why he was there. She also stated she had "no

idea why [Savage] had [her] there."[2]

On June 27, 2018, defendant was stopped in Tensas Parish for a traffic violation. During the stop, officers discovered defendant was in possession of crystal methamphetamine and placed him under arrest. Law enforcement officers decided not to interview defendant about the disappearance of Ricardo Miles or McDaniel's statements because he appeared to be under the influence of narcotics at the time of his arrest.[3]

Defendant was interviewed on July 2, 2018, and he was questioned as to McDaniel's statements and the location of the victim's body. The interview was not recorded. However, according to the testimony of the deputies, defendant began to cry and volunteered to take the deputies to the location of the victim's body. Thereafter, defendant guided the deputies to an area near Crooked Bayou Road, known as the Sawmill Hunting Club (the same area the telephone records had placed the victim and Savage on June 2, 2017). Once they arrived at the location, defendant collapsed against the police vehicle and began to cry. He asked for an attorney and was returned to the TPSO. After searching the area, the officers did not find the victim's remains.

On September 21, 2020, Fred Newcomb, a forestry worker, was evaluating and marking timber to be cut near the Sawmill Hunting Club in

---

[2] Curt Fussell, defendant's nephew, was interviewed by the TPSO. Curt told the officers defendant's son, John Fussell, Jr. ("Bubba") told him he was "pretty sure" defendant "went out there and helped them move the track hoe pretty much from the burial site" "the night [the victim] went missing." However, during his testimony at the trial, Curt denied stating the track hoe was moved on June 2, 2017. He also denied telling police officers anything about a "burial site." Curt's recorded statement was played for the jury.

[3] Defendant was described as disheveled and "fidgety," and one law enforcement officer testified defendant's "facial features were twitching."

4

Tensas Parish. Newcomb discovered what appeared to be a human skull and alerted the TPSO. During a subsequent search of the area, law enforcement officers discovered other human skeletal remains. An examination of the skull revealed a single bullet hole on the rear right side. Thereafter, the skeletal remains were determined to be those of the victim, Ricardo Miles.[4]

On October 29, 2018, defendant was charged by bill of indictment with being a principal to second degree murder, in violation of La. R.S. 14:30.1 and 14:24. On January 21, 2022, he was charged by bill of information with conspiracy to commit second degree murder, in violation of La. R.S. 14:30.1 and 14:26.[5] The charges contained in the bill of indictment and bill of information were consolidated for trial purposes.

During the trial, McDaniel testified as to the statement she provided to law enforcement officers. Defendant testified and denied being present when the murder was committed, and he denied offering to lead the police officers to the location of the victim's remains. He stated the officers told him he was "supposed to been the one standing by the track hoe and suppose to have done away with a body that Derrick Savage was supposed to shot" and began to question him about the track hoe. According to defendant, he told the officers, "I can take y'all where I work on track hoes," and he led them to the location where he had previously worked on farming machinery.

---

[4] Dr. Ginesse A. Listi, director of the Louisiana State University Forensic Anthropology and Computer Enhancement Services, was accepted as an expert in the field of forensic anthropology. Dr. Listi testified a portion of the cranium bone was submitted for DNA analysis, which confirmed the skeletal remains were those of the victim, Ricardo Miles. Additionally, Sgt. Tayla Pinell testified as an expert in DNA analysis. Sgt. Pinell performed the DNA testing on the skull and confirmed a match to the victim.

[5] Defendant was charged with "conspir[ing] with Derrick Savage to commit Criminal Conspiracy to Commit Second Degree Murder of Richardo D. Miles."

Defendant testified the officers took him to another location and told him "it happened right here." Defendant also stated he told the officers he had nothing to do with the murder "because I didn't even know this was a road." Defendant stated he began to cry because he was angry "[be]cause they [were] trying to make me out a liar," and he fell against the vehicle because "them shackles, they tripped me in the dirt."

Moreover, defendant testified he did not enter into an agreement with Savage to kill the victim; he did not plan to be with Savage when he killed the victim; he did not dispose of the victim's body; and he would have alerted the sheriff if he had known Savage was planning to kill the victim. Defendant testified he and McDaniel were afraid of Savage, and he did not blame her for reporting Savage. However, defendant testified McDaniel was not being truthful when she stated he was at the scene of the murder.

During cross-examination, defendant admitted he had been using crystal methamphetamine for approximately 20-25 years. He also testified he purchased drugs from a supplier in Franklin Parish, and he had never purchased them from Savage. Defendant also admitted at a previous hearing, he testified that he traveled to Vinton, Louisiana, near Lake Charles, on June 2, 2017, the day of the murder. However, at trial, he stated he was unable to recall his whereabouts on that date. Defendant reiterated he was not at the scene when the victim was killed, and he did not know why McDaniel stated he was there.

At the conclusion of the evidence, the jury was instructed, "The law requires at least ten of you must agree on the same verdict before you can arrive at a verdict." The jury was also instructed, "When at least ten of you

6

have agreed on the same verdict for each charge, your foreperson shall write the verdicts on the forms as those words appear on the forms." The verdict form, signed by the foreperson of the jury, provides: "11/1 – Guilty of Principal to Second degree murder." The jury unanimously convicted defendant of conspiracy to commit second degree murder. Despite the non-unanimous verdict, the trial court sentenced defendant to life in prison at hard labor without the benefit of probation, parole, or suspension of sentence for the murder conviction. He was also sentenced to serve 15 years at hard labor for the conspiracy to commit second degree murder conviction. The sentences were ordered to be served concurrently.

Defendant appeals.

### DISCUSSION

Defendant contends his conviction for second degree murder by a non-unanimous jury vote and respective sentence should be vacated pursuant to *Ramos v. Louisiana*, 590 U.S. ——, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020). The State concedes non-unanimous verdict violates the United States Supreme Court's ruling in *Ramos*, *supra*, and "based on the current status of the law, this court must reverse the conviction of Principal to Second Degree Murder and remand that charge back to the district court for a new trial."

In *Ramos*, *supra*, the United States Supreme Court expressly held that the right to a jury trial under the Sixth Amendment to the U.S. Constitution, incorporated against the states by way of the Fourteenth Amendment to the U.S. Constitution, requires a unanimous verdict to convict a defendant of a serious offense in both federal and state courts. The Court concluded:

> Wherever we might look to determine what the term "trial by an impartial jury trial" meant at the time of the Sixth Amendment's adoption–whether it's the common law, state practices in the founding era, or opinions and treatises written soon afterward–the answer is unmistakable. A jury must reach a unanimous verdict in order to convict.

*Ramos*, 140 S. Ct. at 1395.

In the instant case, the murder was committed in 2017. However, defendant's trial did not commence until February 2022. *Ramos*, *supra*, rendered on April 20, 2020. Consequently, by the time defendant's trial began, *Ramos* had been established as the governing precedent over verdicts in jury trials. Accordingly, we vacate defendant's conviction and sentence for second degree murder, and we remand this matter to the district court for a new trial.

Defendant also contends the evidence was insufficient to find him guilty, beyond a reasonable doubt, of conspiracy to commit second degree murder. He argues the sole evidence linking him to an alleged conspiracy was McDaniel's testimony of defendant's presence at the scene.

The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Ward*, 50,872 (La. App. 2 Cir. 11/16/16), 209 So. 3d 228, *writ denied*, 17-0164 (La. 9/22/17), 227 So. 3d 827. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation

of the evidence for that of the factfinder. *State v. Ward*, *supra*; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297. On appeal, a reviewing court must view the evidence in the light most favorable to the prosecution and must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. *Jackson*, *supra*.

The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Ward*, *supra*. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Ward*, *supra*; *State v. Eason*, 43,788 (La. App. 2 Cir. 2/25/09), 3 So. 3d 685, *writ denied*, 09-0725 (La. 12/11/09), 23 So. 3d 913. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Burd*, 40,480 (La. App. 2 Cir. 1/27/06), 921 So. 2d 219, *writ denied*, 06-1083 (La. 11/9/06), 941 So. 2d 35.

The *Jackson*, *supra*, standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential

element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Ward*, *supra*; *State v. Speed*, 43,786 (La. App. 2 Cir. 1/14/09), 2 So. 3d 582, *writ denied*, 09-0372 (La. 11/6/09), 21 So. 3d 299. To convict a defendant based upon circumstantial evidence, every reasonable hypothesis of innocence must be excluded. La. R.S. 15:438; *State v. Johnston*, 53,981 (La. App. 2 Cir. 9/22/21), 326 So. 3d 970.

La. R.S. 14:26 provides:

A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement.

B. If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed crime, and a conviction for one shall not bar prosecution for the other.

Criminal conspiracy requires either an agreement, or a combination of two or more persons for the specific purpose of committing any crime, an act in furtherance of the object of the agreement or combination, and specific intent. *State v. Pierce*, 51,145 (La. App. 2 Cir. 2/15/17), *writ denied*, 17-0661 (La. 4/6/18), 240 So. 3d 184; *State v. Passaniti*, 49,075 (La. App. 2 Cir. 6/27/14), 144 So. 3d 1220, *writ denied*, 14-1612 (La. 3/6/15), 161 So. 3d 14. The overt act need not be unlawful; it may be any act, innocent or illegal, accompanying or following the agreement, which is done in furtherance of the object of the agreement. *State v. Pierce*, *supra*; *State v. Broussard*, 49,240 (La. App. 2 Cir. 10/1/14), 149 So. 3d 446. Further, specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the proscribed criminal consequences

to follow his act or failure to act. La. R.S. 14:10(1); *State v. Shivers*, 43,731 (La. App. 2 Cir. 12/3/08), 998 So. 2d 877, *writ denied*, 09-0161 (La. 10/30/09), 21 So. 3d 274; *State v. Davies*, 35,783 (La. App. 2 Cir. 4/5/02), 813 So. 2d 1262, *writ denied*, 02-1564 (La. 5/9/03), 843 So. 2d 389.

Elements of conspiracy may be proven by direct or circumstantial evidence. *State v. Pierce*, *supra*; *State v. Davis*, 12-512 (La. App. 5 Cir. 4/24/13), 115 So. 3d 68, *writ denied*, 13-1205 (La. 11/22/13), 126 So. 3d 479. For purposes of conspiracy, specific intent may be inferred from the circumstances of the transaction and actions of the defendant. *State v. Pierce*, *supra*; *State v. Broussard, supra*. Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. *State v. Randle*, 49,952 (La. App. 2 Cir. 6/24/15), 166 So. 3d 465; *State v. Daniels*, 607 So. 2d 620 (La. App. 2 Cir. 1992). The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every other reasonable hypothesis of innocence. La. R.S. 15:438.

In the instant case, the State did not present any direct evidence of criminal conspiracy. Therefore, we must determine whether the circumstantial evidence presented was sufficient for the jury to infer or conclude other facts existed to support defendant's guilt beyond a reasonable doubt.

McDaniel testified defendant was standing on a track hoe at the location of the shooting when she, Savage, and the victim arrived. After Savage shot the victim, defendant shook hands with Savage and the two men shared a laugh. Defendant adamantly denied being at the scene of the

11

murder. However, multiple law enforcement officers testified defendant volunteered to lead them to the location of the victim's body, and did, in fact direct them to an area close in proximity to where the victim's remains were ultimately discovered. Further, Curt Fussell's recorded statement regarding defendant moving the track hoe "from the burial site the night [the victim] went missing" was played for the jury.

After viewing the evidence in a light most favorable to the prosecution, we find the evidence was sufficient for the jury to infer defendant was guilty of conspiracy to commit second degree murder. The jury was in the best position to observe the witnesses and their demeanor, and the jury chose to believe McDaniel's testimony regarding the events which transpired before and after the victim was shot. Further, the testimony of the law enforcement officers pertaining to defendant's knowledge of the location of the victim's remains, in addition to Curt Fussell's statement concerning defendant's actions the night of the murder, support the jury's conclusion. Consequently, we find the jury was presented with sufficient evidence to conclude defendant conspired with Savage to commit a crime, and Savage did an act in furtherance of the object of the conspiracy.

Moreover, defendant contends his convictions for second degree murder and conspiracy to commit second degree murder constitute a violation of constitutional prohibitions against double jeopardy.

Specifically, defendant argues the jury convicted him based on the same evidence for both convictions.[6]

The Fifth Amendment to the United States Constitution provides that no person shall be subject for the same offenses to be twice be put in jeopardy of life or limb. *State v. Randle*, 49,952 (La. App. 2 Cir. 6/24/15), 166 So. 3d 465; *State v. Broussard*, 49,240 (La. App. 2 Cir. 10/1/14), 149 So. 3d 446. The test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 2d 306 (1932) determines whether each crime requires proof of an additional fact which the other does not. *Randle, supra; Broussard, supra*.[7]

The prohibition against double jeopardy protect against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *State v. Gasser*, 22-00064 (La. 6/1/22), 346 So. 3d 249; *State v. Johnson*, 94-1077 (La. 1/16/96), 667 So. 2d 510; *State v. Hill*, 54,644 (La. App. 2 Cir. 9/21/22), 348 So. 3d 1283.

Under Louisiana law, second degree murder and conspiracy to commit second degree murder are separately defined crimes under La. R.S. 14:30.1 and La. R.S. 14:26. Under these statutes, second degree murder and conspiracy to commit second degree murder require proof of at least one fact

---

[6] Defendant concedes he did not raise the issue of double jeopardy by filing a pretrial motion to quash. However, although a claim of double jeopardy is usually raised in a pretrial motion to quash, it can be raised at any time. La. C. Cr. P. art. 594; *State v. Smith*, 323 So. 2d 1975 (La. 1975); *State v. Hill*, 54,644 (La. App. 2 Cir. 9/21/22), 348 So. 3d 1283.

[7] In *State v. Frank*, 16-1160 (La. 10/18/17), 234 So. 3d 27, the Louisiana Supreme Court dispensed with the Louisiana's separate "same evidence" test, finding courts were bound only to apply the "distinct fact" test set forth in *Blockburger, supra*.

the other does not. *State v. Randle*, *supra*. Additionally, a substantive crime and a conspiracy to commit the substantive offense are not the same offenses for purposes of double jeopardy. *United States v. Felix*, 503 U.S. 378, 112 S. Ct. 1377, 118 L. Ed. 2d 25 (1992); *Iannelli v. United States*, 420 U.S. 770, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975); *State v. Randle*, *supra*. Furthermore, La. R.S. 26(A) expressly provides conspiracy is a separate and distinct offense for purposes of double jeopardy, conspirators may be tried for either conspiracy or the completed offense, and a conviction for one offense does not bar prosecution for the other. *Randle*, *supra*; *Broussard*, *supra*. This assignment lacks merit.

## CONCLUSION

For the reasons set forth herein, we vacate defendant's conviction and sentence for second degree murder and remand this matter to the trial court for a new trial. Defendant's conviction and sentence for conspiracy to commit second degree murder are hereby affirmed.

**CONVICTION AND SENTENCE FOR SECOND DEGREE MURDER VACATED; CONVICTION AND SENTENCE FOR CONSPIRACY TO COMMIT SECOND DEGREE MURDER AFFIRMED; REMANDED.**